JOHN P. ADRIANCE ET AL. V. JAMES RUTHERFORD.

*Contract of sale or agency—Lien upon receipts—Replevin.*

1. A quantity of mowers and reapers were delivered by the manufac-
turers under a contract which left it uncertain whether they were sold
to the recipient, or whether he was merely made an agent for their
sale to others. He was under no restriction as to selling them, but
if in payment to the manufacturers he turned over any notes re-
ceived by him, he must indorse them himself, and such notes must
also contain a "property statement," and be payable at certain dates.
*Held*, that this was consistent with a sale of the machines to the re-
cipient; and a further provision that the proceeds of his own sales,
whether in notes, cash or accounts, shall be the manufacturers' prop-
erty, and held in trust for them, is not necessarily inconsistent with
it, as it only contemplates that such proceeds shall be treated as se-
curity.

2. Whether a wholesaler who sells to a retailer can establish a lien upon
the proceeds of the latter's sales by stipulating that they shall be held
in trust for him—Q.

3. Replevin is a possessory action, and will not lie for property which is
held in trust by defendant for plaintiff as a mere security for the pay-
ment of what the former owes the latter.

4. A contract constituting a certain person an agent to sell machines
manufactured by the other party, provided that all machines not sold
by a certain date might be returned; if not returned by a specified
date, they were treated as sold to the agent. It also provided that
the contract might be canceled by the manufacturer whenever he
should become dissatisfied with the agent, and that the manufacturer
might then retake possession of machines remaining in the agent's
possession. *Held*, that this meant dissatisfaction with the agent's
services as agent; and that the agent's death meanwhile terminated
the contract and the services, and gave the manufacturer the right to
resume possession of such machines as were left undisposed of, and
he could replevy them from the agent's administrator.

Case made after judgment from Oakland. (Stickney, J.)
May 6.—June 3.

REPLEVIN. Defendant had judgment. Modified.

*Hammond & Barkworth* for plaintiffs.

*E. J. Bissell* and *Fred. A. Baker* for defendant appellee. A stipulation that a purchaser may return merchandise within a certain time amounts to a mere contract for re-purchase: *Marsh v. Wickham* 14 Johns. 167; and its breach results in no forfeiture of rights: *Giddy v. Altman* 27 Mich. 210; *Holmes v. Hall* 7 Mich. 66.

Cooley, C. J. This is an action of replevin for the recovery of three Adriance mowers, and a promissory note for the sum of $100, given by one McCulloch to the defendant, as administrator of James H. Place, deceased, in payment for an Adriance mower which Place had sold McCulloch. The case was tried without a jury, and the circuit judge found the facts as follows:

On the fourth day of January, 1882, the plaintiffs were engaged in the business of manufacturing mowers and reapers and dealing therein under the firm name of Adriance, Platt & Co., in the state of New York. C. H. Roy was their general agent in the State of Michigan, and as such general agent he entered into the following written contract with James H. Place, of Milford, Oakland county, Michigan:

"Milford, Michigan, January 4, 1882.

Adriance, Platt & Co., of New York, agree to sell and to deliver, as they shall be ordered (unless prevented by some accident to their works or their store-house, or cause beyond their control), to J. H. Place of Milford in season for the harvest of 1882,

| | | | | | | |
|---|---|---|---|---|---|---|
| 10 Adriance reapers, | @ $85 each | - | - | - | $ 850 |
| 10 " mowers, size B, @ 55 " | - | - | - | - | 550 |
| — " " " A, @ 60 " | - | - | - | ... |

$1400

Payment due August 1, 1882, for all machines ordered and delivered; interest at the rate of seven per cent. per annum from that date.

Machines to be sold for use only within the following territory, to wit, Milford and vicinity. Machines to be delivered at boat or cars, Poughkeepsie, New York, and J. H. Place hereby agrees to purchase and take upon the above terms, the number of machines herein specified, and to pay for the same one-third cash, August 1, 1882; one-third notes, payable at bank, with interest from August 1, 1882, due

January 1, 1883 ; one-third notes payable at bank, with interest from August 1, 1882, due October 1, 1883. All notes to contain a property statement showing maker to be worth $2,000 over and above all liabilities. Further agrees to indorse all notes given to Adriance, Platt & Co. under this contract; also to thoroughly canvass the above-named territory, to use diligent effort to maintain the reputation and extend the sale of Adriance, Platt & Co.'s machines, and to pay all freight or express charges on all advertising matter sent. Any of the above machines remaining unsold August 1, 1882, in as good condition as when received by J. H. Place, may be returned to Adriance, Platt & Co., and deducted from above purchase. This contract to apply to any machines furnished by Adriance, Platt & Co. for the harvest of 1882.

All direct sale goods which are printed in heavy type in Adriance, Platt & Co.'s price-list of extra parts, they will sell to the party named in this contract at forty per cent. discount from price-list, to be settled for by cash September 1, 1882. Other extra parts printed in Adriance, Platt & Co.'s list they will consign at twenty-five per cent. discount from list prices. A full statement in detail of consigned goods remaining unsold September 1, 1882, shall be mailed to Adriance, Platt & Co. promptly by that date, with settlement for those sold. Consigned goods which are not reported as on hand before November 1, 1882, shall be paid for in full, with interest from September 1, 1882. All proceeds of sale of such machines, or parts of machines, whether in notes, cash, or accounts, shall be the property of Adriance, Platt & Co., held in trust in the hands of J. H. Place until he shall have fully paid his indebtedness under this contract. Adriance, Platt & Co. have the right to cancel this agreement at any time when they shall become dissatisfied with J. H. Place, and to take possession of any machines or parts of machines remaining unsold.

[Signed]                    ADRIANCE, PLATT & CO.
                            Per C. H. ROY.
          J. H. PLACE."

On the back of the contract was the following indorsement :

" Adriance, Platt & Co. further agree, as a part of the within contract, to allow at settlement freight paid in excess of two dollars on each mower, and three dollars on each reaper, sold and settled for."

The machines mentioned in plaintiffs' declaration were machines furnished by plaintiffs to said Place, together with other machines under said contract, and Place paid the freight on them; afterwards Place sold and delivered most of said machines to farmers living in Oakland county, in the vicinity of Milford, upon orders in which appears the word "Agent" after the name of J. H. Place, blanks for such orders being furnished by Adriance, Platt & Co. In August, 1882, Place died, and the defendant, James Rutherford, in the month of November, 1882, was appointed general administrator of the estate of Place, and as such took possession of the machines mentioned in plaintiffs' declaration, and took the note in question in settlement for one of the machines delivered to Place under the contract and by him sold.

Before the commencement of suit, a demand was made on defendant by plaintiffs' agent for the machines and note in question, but defendant refused to surrender them. Prior to the death of Place, the plaintiffs had never expressed themselves as dissatisfied with him. Accompanying each order for the sale of machines by Place was a copy of manufacturers' warranty.

Upon these facts the judge ordered judgment for defendant.

The contract in question is very unusual, and very peculiar in some of its terms. It purports to be one of sale, and one-third of the purchase price of the goods is to be paid in cash, August 1, 1882; another third in notes due January 1, 1883; and the remainder in notes due October 1, 1883. At what time the notes are to be delivered to the vendors is not stated. The notes are to contain a "property statement," and are to be indorsed by Place. The goods not sold by August 1, 1882, Place has the option of returning. A statement of goods unsold September 1, 1882, is to be mailed to the plaintiffs promptly by that date, with settlement for those sold; and consigned goods not reported as on hand before November 1, 1882, are to be paid for in full, with interest from September 1, 1882. Then follows the clause that all proceeds of sales, whether in notes, cash, or accounts, are to

be the property of the plaintiffs, and held in trust for them by Place until he shall have fully paid his indebtedness under the contract.

It is difficult to reconcile the several parts of this contract with each other. Some of them seem very plainly to contemplate a sale, others an agency. The stipulations regarding payment are obscure, indefinite, and conflicting. It seems probable that the contract was drawn by some one who had little or no knowledge of the effect of legal terms, and who, if he had any clear idea of what he proposed to accomplish, has failed to express it so that it may be clearly perceived by others.

It seems probable, also, that the parties contemplated that payment for machines received and sold would be made principally in notes taken from the purchasers. But Place was under no restrictions as regards the sales to be made by him, and might make his own terms. He could, however, turn over to the plaintiffs no notes which did not contain the "property statement," or which were not payable at the times specified in the contract, or which he did not himself indorse. The unrestricted authority which he unquestionably possessed as regards the terms of sales to be made by himself very strongly tends to give the contract character as one of sale. The stipulation that the proceeds of sales, whether in notes, cash or accounts, shall be the property of the plaintiffs, and held in trust for them, can scarcely be said to militate against this view, for plaintiffs do not in any event agree to take accounts in payment, or notes which were not such as the contract describes. When, therefore, the contract provides that the proceeds of sales made by Place shall be the property of the plaintiffs, it seems plain that what is contemplated is that they shall be theirs by way of security merely ; that they shall have a lien upon them until full payment is made. Whether a lien could be created in that way, when the debtor himself was to be the custodian of the property and hold it in trust for the creditor, we need not inquire. It is enough for the purposes of this case that the action is a possessory action, and that the contract does

not give to the plaintiffs, or purport to give to them, a right to the possession of the proceeds of sales. Place agreed to hold them in trust, and they did not require him to do more. As to the note, then, the action must fail.

As to the machines I think the case is different. The contract of the plaintiffs with Place was to some extent unquestionably a contract of agency. Place undertook to canvass thoroughly certain territory for the sale of their machines, and all which they had sent him and which remained unsold August 1, 1882, he had the privilege of returning. The sale, then, as to such machines, was a sale only at his option. It was then provided that plaintiffs had the right to cancel the agreement at any time when they should become dissatisfied with Place, and to take possession of the unsold machines. The sales, therefore, as to any machines not sold by Place, were subject to cancelment by plaintiffs at any time.

The dissatisfaction with Place, which the contract contemplates as possible, is evidently a dissatisfaction with him in acting for them, and pushing the sale of their machines. The purpose of this provision of the contract was to make sure that diligence and vigor should be displayed by Place in canvassing the territory assigned to him. It is found by the judge that no dissatisfaction was expressed while Place was living; and it seems to be assumed that by his death plaintiffs have lost the benefit of this provision. If the purpose had been merely to secure his own personal good behavior, there would be some ground for this view; but if the purpose was, as we think, to make sure that plaintiffs should have the benefit of his faithful services, then his death is quite as good ground for their exercise of the option to revoke the sales as any inefficiency or misconduct on his part could possibly be. What they were to be satisfied or dissatisfied with was his conduct as their agent in pushing sales; and when his death terminated the agency, there was nothing to be satisfied with. If, under such circumstances, they may not rescind the sale, then the death of Place has taken from them a valuable right under the contract, and given to his estate a valuable right which he himself could not have

claimed. But a contract ought not to be so construed as to produce this consequence, especially when it is plain that the intent of the parties will be thereby defeated. These plaintiffs provided for the contingency of their becoming dissatisfied with Place as their agent; and the impossibility of his longer acting for them furnishes the best possible ground for dissatisfaction. The death, in fact, puts an end to the agency.

As to the machines, then, I think the plaintiffs entitled to recover. It is urged for the defense that the judge does not find that the machines were not paid for. But the record gives no indication that any such point was made in the court below, and it fails to show that the circumstances were such as to entitle the plaintiff to demand payment. The machines remained on hand unsold, and we cannot assume that Place charged himself with responsibility for immediate payment by failing to make report of them as on hand.

The judgment should be reversed as to the machines and judgment entered for the plaintiffs in this Court for nominal damages and costs.

The other Justices concurred.